**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW HOOKS, individually, and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No: 1:25-cv-09754 |
| v. | ) ) | Hon. Judge Georgia N. Alexakis |
| CLOUDSPOTTER TECHNOLOGIES INC.; NORTHWESTERN UNIVERSITY, | ) ) ) | Hon. Magistrate Keri L. Holleb Hotaling |
| Defendants. | ) | |

**REPLY IN SUPPORT OF NORTHWESTERN UNIVERSITY'S**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

**INTRODUCTION**

Northwestern University's ("Northwestern") Motion to Dismiss raises two legal issues: (i) whether Northwestern is a "financial institution" exempt from Illinois's Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*., and (ii) whether Plaintiff has adequately alleged that Northwestern "collected" or "possessed" biometric data due to a photographer utilizing CloudSpotter's SpotMyPhotos software at an event taking place at a Northwestern facility. Each issue warrants dismissal with prejudice here.

First, this Court should find, based on the pleadings alone, that Northwestern is a financial institution exempt from BIPA, just as Judge Lefkow did a few years ago. *See Doe v. Northwestern. University*, 586 F. Supp. 3d 841 (N.D. Ill. 2022). In his opposition, Plaintiff (i) does not challenge that a "financial institution" is wholly exempt from the BIPA; (ii) does not challenge any of the information Northwestern provided in its Motion to Dismiss, or that the information submitted is properly subject to judicial notice; and (iii) does not dispute a university *can* qualify as a financial institution, and that Illinois courts have dismissed BIPA cases on this basis.

Plaintiff instead argues that Northwestern did not provide sufficient information to assess at this point that it is "significantly engaged" in financial activities, and contends that "mere participation in student aid programs" is insufficient to meet this threshold. But Plaintiff's "mere participation" strawman argument is misplaced. Far from "mere participation" in student loan programs, in granting Northwestern's motion to dismiss Judge Lefkow specifically determined that Northwestern *is* "significantly engage[d]" in lending, and predicated this holding on the same information submitted here. *See Doe*, 586 F. Supp. 3d at 843; *see also Powell v. DePaul Univ.*, No. 21 C 3001, 2022 WL 16715887, at *3 (N.D. Ill. Nov. 4, 2022) (finding at the pleading stage that DePaul significantly engaged in lending). This exemption warrants dismissal with prejudice.

Second, this Court should find that Plaintiff failed to adequately allege that Northwestern "captured" or "collected"[1] or "possessed" biometric data. Plaintiff contends that (i) he attended an event at a Northwestern facility; (ii) a photographer was present; (iii) that photographer took photos and transmitted those photos to CloudSpotter; and (iv) CloudSpotter's SpotMyPhotos software derives biometric data. But these allegations do not support Plaintiff's inferential leap to the conclusion that *Northwestern* collected and then disclosed biometric data to CloudSpotter.

In his opposition, to support the theory that Northwestern is liable for the actions of a photographer present at its facility, Plaintiff portrays the unidentified photographer as an employee or agent of Northwestern, then uses *ipse dixit* to describe this photographer as "Northwestern's photographer[]." There are three problems with this theory of liability: (i) Plaintiff alleges *no facts* to plausibly suggest that this photographer was affiliated with Northwestern; (ii) Plaintiff does not even attempt to allege a theory of vicarious liability; and (iii) Plaintiff does not allege that the photographer itself collected or possessed biometric data.

The simple reality is that, by Plaintiff's own portrayal, all biometric processes occurred on the CloudSpotter end through the SpotMyPhotos software. Plaintiff does not allege Northwestern, or even the photographer at issue, controlled or possessed this software. Plaintiff does not allege Northwestern participated in any capture or collection or that it exercised any control over the biometric data. Indeed, it would be nonsensical for Northwestern to disclose biometric data to CloudSpotter, when **CloudSpotter** is alleged to have collected and possessed the biometric data in the first instance. As such, separate and apart from the fact that Northwestern is an exempt financial institution, the Court should dismiss the Complaint as to Northwestern with prejudice for failure to allege any facts to support that Northwestern captured, collected, or possessed biometric data.

---

[1] Northwestern uses "capture" and "collect" to encompass the verbs used in Subsection 14/15(b).

## **DISCUSSION**

### I.     NORTHWESTERN IS A FINANCIAL INSTITUTION UNDER THE GLBA.

#### A.     Plaintiff Fails to Challenge any Information Submitted by Northwestern.

As detailed below, Plaintiff fails to challenge much of Northwestern's financial institution argument. Plaintiff does not (i) dispute that a "financial institution" is exempt from the BIPA, or dispute the definition of a financial institution; (ii) oppose the information Northwestern provided in its Motion to Dismiss, or oppose that it is properly subject to judicial notice; or (iii) challenge whether a university *can* qualify as a financial institution under the Gramm-Leach-Bliley Act ("GLBA"), or that courts in Circuit have dismissed cases on that basis. Plaintiff thus waives any opposition to these issues. *See Wojtas v. Cap. Guardian Tr. Co.*, 477 F.3d 924, 926 (7th Cir. 2007).

Subsection 25(c) of the BIPA exempts "financial institutions" subject to Title V of the GLBA. (*See* Dkt. 21 at 6-7.) This provides a broad exemption from BIPA for financial institutions. *See Powell*, 2022 WL 16715887, at *2 (N.D. Ill. Nov. 4, 2022) ("BIPA does not apply to financial institutions already subject to GLBA."). Plaintiff does not challenge, and in fact concedes, that financial institutions subject to Title V of the GLBA are wholly exempt from the BIPA. (Dkt. 35 at 4.) Plaintiff similarly takes no issue with Northwestern's analysis of the term "financial institution," as a term of art defined under the GLBA. (Dkt. 21 at 6-7.) There can thus be no dispute that a "financial institution" under Subsection 25(c) refers to any institution engaged in financial activities. *See Doe*, 586 F. Supp. 3d at 843 ("Under GLBA, a financial institution is 'any institution the business of which is engaging in financial activities.'") (internal citation omitted); *see also Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1171 (C.D. Ill. 2022).

Moreover, Plaintiff did not challenge the exhibits submitted by Northwestern, or that these documents are properly subject to judicial notice. Northwestern submitted announcements from the Federal Student Aid ("FSA") Office of the Department of Education ("DOE"), including one

3

published on July 29, 2015 noting that "FSA requires institutions to comply with the Gramm-Leach-Bliley Act . . ." and stating that financial services organizations include "institutions of higher education." (Dkt. 21-3; *see also* Dkt. 21-4 [including a document published by the FSA Office noting that "The Federal Trade Commission . . . has determined that institutions of higher education are financial institutions under GLBA."].)[2] Northwestern also attached a list from the DOE of universities that participate in Title IV federal student aid programs, including Northwestern. (Dkt. 21-2 [identified at School Code 001739].)

Plaintiff's concession that these documents are properly subject to judicial notice is critical, as Illinois courts have turned to these documents in applying the financial institution exemption to universities. Judge Lefkow specifically cited the July 29, 2015 FSA announcement in granting Northwestern's motion to dismiss. *See Doe*, 586 F. Supp. 3d at 843 (holding that "[a]s to Northwestern's status as an institution of higher education that 'significantly engage[s] in lending funds,' publicly available government documents confirm it to be so" and citing the July 29, 2015 FSA announcement); *see also Duerr*, 590 F. Supp. 3d at 1171 ("Defendant has attached judicially noticeable documents from the U.S. Department of Education indicating its participation in federal student aid programs requiring GLBA and FERPA compliance."); *Powell v. DePaul Univ.*, No. 21 C 3001, 2022 WL 16715887, at *3 (N.D. Ill. Nov. 4, 2022) (same).

Finally, Plaintiff does not colorably challenge that a university *can* be a financial institution, or that Illinois courts have dismissed BIPA cases on this basis (including as to

---

[2] Plaintiff discounts the FSA and DOE documents because "the DOE has not been given rulemaking or enforcement authority with respect to the statute." (Dkt. 35 at 5 n.3 [internal quotations and citation omitted].) Plaintiff misses the point. Northwestern is not suggesting these documents are de facto regulations or binding guidance; rather, Northwestern submitted the documents simply to indicate that Northwestern is significantly engaged in financial activities (and what those activities are). And multiple courts have turned to these documents for this exact purpose. *See, e.g.*, *Doe*, 586 F. Supp. 3d at 843; *Powell*, 2022 WL 16715887, at *3.

Northwestern). (Dkt. 35 at 3-5.) As detailed below, Plaintiff contests only whether Northwestern provided sufficient information to establish at this stage that it is a financial institution as that term is used under Title V of the GLBA. The scope of the dispute over this issue is thus that narrow.

### B. Northwestern Is a Financial Institution Under Title V of the GLBA.

Plaintiff's opposition to applying the financial institution exemption rests effectively on a single argument: Northwestern has not sufficiently established at this stage that it qualifies as a financial institution under Title V of the GLBA. (Dkt. 35 at 4-5.) Plaintiff's argument is misplaced.

#### i. Northwestern is "significantly engaged" in financial activities.

Plaintiff contends Northwestern cannot qualify for this exemption for two reasons: (i) Northwestern relies on the wrong regulation, and (ii) in any event, Northwestern is not significantly engaged in financial activities. (*Id.*) Each argument fails.

First, and at the outset, Judge Lefkow—referring to the same information submitted here—already determined that "[a]s to Northwestern's status as an institution of higher education that 'significantly engage[s] in lending funds,' publicly available government documents confirm it to be so . . . ." *Doe*, 586 F. Supp. 3d at 843 (internal citation omitted). Other courts have ruled similarly as to other institutions. *See Duerr*, 590 F. Supp. 3d at 1171 ("Here, too, the Court finds Defendant has demonstrated it is a financial institution within the meaning of the GLBA by virtue of its significant engagement lending funds to consumers.").

Plaintiff offers one argument to the contrary. Plaintiff contends that *Doe* (and Northwestern here) relied on FTC guidance he asserts is no longer valid. (Dkt. 35 at 4-5.) Plaintiff cites and relies on *Patterson v. Respondus* (wherein Lewis University raised the financial institution exemption), which noted that in 2010 the majority of the rulemaking authority under the GLBA was transferred to the Consumer Financial Protection Bureau ("CFPB"). *See Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 820 (N.D. Ill. 2022) [hereinafter "*Patterson I*"]. The court's decision in *Patterson I*

was based on the fact that Lewis University relied on the wrong regulation; the court was "unwilling to untangle this web of agency authority without the benefit of further briefing." *Id.*

Plaintiff overstates *Patterson I* and the significance of the transfer of rulemaking authority to the CFPB. The reality is that "[i]n 2011 the CFPB adopted and republished the privacy rules originally promulgated by the FTC." *Powell*, 2022 WL 16715887, at *3. The *Patterson* court noted as much on reconsideration. *See Patterson v. Respondus, Inc.*, No. 20 C 7692, 2022 WL 7100547, at *7 (N.D. Ill. Oct. 11, 2022) [hereinafter "*Patterson II*"]; *Fee v. Illinois Inst. of Tech.*, No. 21-02512, 2022 WL 2791818, at *3 (N.D. Ill. July 15, 2022) (reciting the regulatory history and holding: "Reading the relevant statutory and regulatory language together, there is little doubt that an institution of higher education like IIT can be considered a financial institution subject to Title V of the GLBA where it regularly extends and administers student loans."); (Dkt. 21 at 8 n.2.) The transfer of rulemaking authority thus does not undercut that Northwestern is a financial institution under the GLBA. *See Powell*, 2022 WL 16715887, at *3; *Fee*, 2022 WL 2791818, at *3.

Second, Plaintiff's argument boils down to the assertion that "participation in student loan programs is not enough to" constitute significant engagement in financial activities. (Dkt. 35 at 5.) But Plaintiff's argument fails for multiple reasons, in addition to Judge Lefkow's holding in *Doe*. At the outset, Plaintiff misapprehends what "significantly engaged" means under the GLBA. (*See* Dkt. 35 at 3-4 [indicating a high bar for "significantly engaged"].) Significantly engaged "means something less than primary . . . ." *Powell*, 2022 WL 16715887, at *3. It is not relevant that a university's primary purpose is not financial. *Id*. The court in *Patterson II* reached this same conclusion in determining that universities can qualify as financial institutions. *See Patterson II*, 2022 WL 7100547, at *8. As Judge Gettleman noted, "[a]t least five courts have reached this exact issue and all have concluded that the exemption in BIPA section 25(c) applies to institutions of

6

higher education that are significantly engaged in financial activities such as making or administering student loans." *Powell*, 2022 WL 16715887, at *3.

More substantively, Plaintiff fails to apprehend the import of *Patterson II*. The court in *Patterson II* found that "participat[ion] in programs through which its students obtain loans from *third-party* lenders" may not itself suffice. *Patterson II*, 2022 WL 7100547, at *9 (emphasis in original). Here, Northwestern established, and Judge Lefkow already found, that it is "significantly engage[s] in lending funds . . . ." *Doe*, 586 F. Supp. 3d at 843; *see also Powell*, 2022 WL 16715887, at *3 (explaining the distinction as it relates to *Patterson II* and finding the financial institution exemption applied to DePaul University); (Dkt. 21-2.) Plaintiff's reliance on *Patterson II* thus does not overcome the specific showing and determination already made as to Northwestern itself.

### ii. *The issue can and should be decided at this stage.*

As a final matter, Plaintiff contends whether Northwestern is a financial institution is a fact question that cannot be evaluated at this stage. (Dkt. 35 at 5-6.) Plaintiff (i) challenges none of the information Northwestern submits, (ii) provides no information he believes could be pertinent to this inquiry, and (iii) fails to even indicate what information he would request to evaluate this issue. Whether Northwestern is a financial institution can be, and *has been*, evaluated at this stage.

Northwestern acknowledges that certain courts have determined that this issue was not ripe at the motion to dismiss stage.[3] *See, e.g.*, *Fee*, 2022 WL 2791818, at *5 (requiring factfinding as to the Illinois Institute of Technology's practices); *Harvey v. Resurrection Univ.*, No. 21-CV-3203, 2022 WL 3716213, at *4 (N.D. Ill. Aug. 29, 2022) (ruling similarly as to Resurrection University). It is not clear whether this was as a result of the particular institutions involved in those cases or

---

[3] Northwestern takes issue with Plaintiff's contention that the "most recent courts" have sided with him. (Dkt. 35 at 5.) The cases cited by both parties were decided in 2022, and the most recent appears to be *Powell* (decided November 4, 2022), which ruled in favor of DePaul and dismissed the BIPA action under the financial institution exemption. *See Powell*, 2022 WL 16715887, at *3.

perhaps the specific arguments put before those courts. *See Fee*, 2022 WL 2791818, at *5 ("[T]he fact that IIT is a participant in federal student aid programs does not, by itself, establish that IIT is *regularly* extending or administering student loans.") (emphasis in original). Nevertheless, Plaintiff's failure to engage in the documentation Northwestern provided is telling. So is Plaintiff's failure to engage in Judge Lefkow's ruling, declining to grapple with the fact that Plaintiff seeks to create conflicting decisions within this District as to Northwestern's status as a financial institution (which would leave Northwestern in an untenable position). Plaintiff, rather, divorces this case from the actual defendant here and turns exclusively to rulings as to other institutions.

Regardless, this issue can and should be evaluated at this stage, just as Judge Lefkow did and other courts have done. *See Doe*, 586 F. Supp. 3d at 843; *Powell*, 2022 WL 16715887, at *3; *Duerr*, 590 F. Supp. 3d at 1171.

## II.    PLAINTIFF FAILS TO ALLEGE ANY FACTS TO PLAUSIBLY SUPPORT THAT NORTHWESTERN COLLECTED OR POSSESSED BIOMETRIC DATA.

### A.    Plaintiff Cannot Avoid His Own Allegations.

As an initial matter, Plaintiff challenges whether he is permitted to engage in inconsistent pleading, and whether he in fact did so. (*See* Dkt. 35 at 8.) Plaintiff next seeks to reshape and alter his own pleadings. This Court should disregard Plaintiff's tactics.

First, while the Federal Rules permit "inconsistencies in legal theories," they "do not tolerate factual inconsistencies in a complaint . . . ." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Plaintiff does not allege alternative legal theories; he alleges inconsistent factual premises. Plaintiff alternatively alleges: (i) "SpotMyPhotos captures and collects biometrics for each person in the photograph, and transmits those biometrics to CloudSpotter," and (ii) "biometrics are captured and collected by the party taking the photographs, such as Northwestern . . . ." (Dkt. 1-1 ¶¶ 6-19.) Plaintiff simultaneously portrays CloudSpotter and

8

Northwestern as capturing and deriving biometric data. Indeed, Plaintiff goes so far as to contend "Northwestern scanned the facial geometry of Plaintiff" while also alleging CloudSpotter in actuality performs this function. (*See id.* ¶¶ 7, 8, 18.) This conflict comes to a head when Plaintiff attempts to assert that Northwestern *shares* biometric data with CloudSpotter, despite also alleging CloudSpotter itself derives the biometric data at issue through its SpotMyPhotos software. (*See id.* ¶¶ 7-9, 16, 46.) Plaintiff is not entitled to plead such conflicting facts. *See, e.g.*, *Bilecki v. Cnty. of Will*, No. 16 CV 4267, 2017 WL 36465, at *4 (N.D. Ill. Jan. 4, 2017) ("The seemingly contradictory pleading defeats this claim as pled.").

Second, Plaintiff cannot launder his allegations in hopes of converting conclusory assertions into fact. Plaintiff argues throughout his brief that the photographer at issue was "Northwestern's photographer" as though this is an alleged fact. (*See* Dkt. 35 at 1, 2, 7, 8.) The problem is Plaintiff nowhere alleges any facts to plausibly suggest that the photographer at the event in question was employed by or in any way affiliated with Northwestern. (*See* Dkt. 1-1 ¶ 13 [conceding Plaintiff does not know the relationship between the photographer and Northwestern].) And Plaintiff nowhere attempts to allege any kind of agency theory (as detailed further below).

Plaintiff next seeks to effectively amend his Complaint by making reference to and requesting judicial notice of an image purportedly from the SpotMyPhotos website. (Dkt. 35 at 7 n.4, 9.) There are substantial problems with this request. To begin, images from the SpotMyPhotos website are not judicially noticeable. *See, e.g.*, *Chavez-Deremer v. Miller*, -- F.4th -- , 2025 WL 2785149, at *4 n.5 (7th Cir. Sept. 30, 2025) (refusing judicial notice of private commercial websites). Indeed, Plaintiff requests this Court "take notice of the fact that Northwestern had to license the use of SpotMyPhotos from CloudSpotter." (Dkt. 35 at 7 n.4.) Plaintiff cannot even allege facts to plausibly suggest Northwestern used SpotMyPhotos, much less ask this Court to

9

take judicial notice that Northwestern (or anyone else for that matter) is a licensee. *See also Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 413 (N.D. Ill. 2012) ("[I]t may not take judicial notice of underlying facts that may be subject to reasonable dispute."). Plaintiff cannot salvage his Complaint by the use of an unexplained, undated, and unauthenticated screenshot from a private website in an opposition brief. *See Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ."). More substantively, Plaintiff's exhibit can also be disregarded because it says nothing of Northwestern's relationship (if any) with the photographer at the event in question, or even with CloudSpotter itself. (*See* Dkt. 35 at 7 n.4, 9; Dkt. 35-1.)

## B. Plaintiff Fails Entirely to Allege Northwestern Collects Biometric Data.

As Northwestern detailed in its Motion to Dismiss, Subsection 14/15(b) of the BIPA provides that "No private entity may ***collect, capture, purchase, receive through trade, or otherwise obtain*** a person's or a customer's biometric identifier or biometric information" without consent. 740 ILCS 14/15(b) (emphasis added). These verbs "'mean to gain control' of Biometrics." *G.T. v. Samsung Elecs. Am. Inc.*, 742 F. Supp. 3d 788, 798 (N.D. Ill. 2024). Furthermore, Illinois courts have held that "section 15(b) liability requires an active step in obtaining biometrics." *Clark v. Microsoft Corp.*, 688 F. Supp. 3d 743, 746 (N.D. Ill. 2023) (collecting cases).

Plaintiff does not challenge any element of this analysis, and thus waives opposition. *See Wojtas*, 477 F.3d at 926. Instead, Plaintiff contends (i) "Photographers . . . are either employees or agents of Northwestern," (ii) the photographers use SpotMyPhotos, (iii) SpotMyPhotos collects biometric data, and (iv) therefore "Northwestern captures and collects individuals' biometrics and then transmits them to Cloudspotter." (Dkt. 35 at 7.) Plaintiff's argument amounts to just a few sentences, without any citation to case law, and presents a misguided view of the allegations actually made. Three issues become readily apparent.

10

First, Plaintiff has alleged no facts whatsoever to plausibly suggest that the photographer at issue was employed by or an agent of Northwestern. *See, e.g.*, *Clark*, 688 F. Supp. 3d at 748 ("That alone is a conclusory jump . . . ."). Plaintiff makes no allegations whatsoever regarding purported agency. *See, e.g.*, *Warciak v. Subway Restaurants, Inc.*, No. 1:16-CV-08694, 2019 WL 978666, at *2 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020) ("To find that a common-law agency relationship existed, the alleged facts must indicate that the principal has control over the agent's acts."). All Plaintiff alleges is that the event he attended was at a Northwestern facility. (Dkt. 1-1 ¶ 35.) Plaintiff does not identify the photographer, or anything about the photographer to suggest a relationship of any kind with Northwestern. In fact, his own analysis pertains not just to the event he attended, but appears to address photographers at Northwestern generally, without any factual basis whatsoever. (*See* Dkt. 35 at 7.)

Second, Plaintiff does not even allege that the *photographer at issue* collected biometric data. Plaintiff alleges that photographers take photographs, but that it is CloudSpotter, through its SpotMyPhotos software, that collects biometric data. (*See* Dkt. 1-1 ¶¶ 5-9.) Plaintiff does not allege that photographers generally, or the photographer at the event in question specifically (much less Northwestern), control or have any access to the SpotMyPhotos software or the biometric data derived therefrom. While Plaintiff disputes whether access is a requirement under the BIPA, (Dkt. 35 at 7), Plaintiff misses the point. The absence of access to the alleged biometric data is plainly indicative of a lack of involvement in the alleged collection of biometric data. *See, e.g.*, *deGrasse v. Hyundai Motor Am.*, No. 24 C 10688, 2025 WL 1413177, at *3 (N.D. Ill. May 15, 2025) ("deGrasse does not even allege that Hyundai has access to FAWS data, let alone that it has undertaken any effort to collect, capture, or obtain it.").

11

Third, and most saliently, Plaintiff does not allege that Northwestern *did anything* vis-à-vis the collection of biometric data, let alone took an active step in its collection. What Plaintiff alleges is that an unnamed photographer uploaded photos using SpotMyPhotos and that software derived biometric data. Northwestern is nowhere to be found in this process, but for the happenstance of the event in question occurring in a Northwestern facility. Were this sufficient, a BIPA claim could be brought against any person or entity on whose property a photographer used the SpotMyPhotos software. Plaintiff provides no authority to suggest that a third-party photographer's use of a fourth-party's software constitutes an "active step" (or any step at all) by Northwestern. *See Clark*, 688 F. Supp. 3d at 748 (setting forth the types of factual allegations that gave rise to an active step in collection, like the ability to access and extract data, or the active management, maintenance and storage of biometric data).

Plaintiff fails to allege facts to support the notion that Northwestern collected or captured biometric data, and as a result Plaintiff's claim under Subsection 14/15(b) must be dismissed.

**C.      Plaintiff's Disclosure Theory Is Fundamentally Flawed and Insufficient.**

Although his Complaint is entirely unclear on this point, Plaintiff takes the view in his opposition that he intended to assert a claim under Subsection 14/15(d) against Northwestern for the alleged disclosure of biometric data to CloudSpotter. (Dkt. 35 at 9-10; *compare* Dkt. 1-1 at Count I [making no reference to 14/15(d)].) There are two fundamental problems with this theory.

First, Plaintiff cannot avoid the inherent conflict in his allegations. As detailed above and in Northwestern's Motion, Plaintiff asserts that ***CloudSpotter*** derives biometric data from photographs. (*See* Dkt 1-1 ¶¶ 7-9.) That is the very premise of this case. It is nonsensical to now suggest that Northwestern "shared" biometric data with CloudSpotter, the entity allegedly deriving the biometric data in the first instance. (*See id.* ¶¶ 18, 39, 46); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (instructing courts in the 12(b)(6) context to "to draw on its judicial experience

12

and common sense."). It is not possible for Northwestern to have either (i) disclosed something it is not alleged to have had access to[4] or (ii) disclosed biometric data to the very party deriving it.

Second, it is beyond dispute that Subsection 14/15(d) requires *possession* of covered biometrics, and that possession is defined to mean "the act or condition of having in or taking into one's control or holding at one's disposal." *Mora v. J&M Plating, Inc.*, 2022 IL App (2d) 210692 ¶ 12 n.5 (internal quotation and citation omitted); *see also Mayhew v. Candid Color Sys., Inc.*, 743 F. Supp. 3d 994, 1009 (S.D. Ill. 2024) (requiring dominion or control). Although Plaintiff asserts on the one hand that control is not required, he then goes on to cite a legal authority and quote a definition that requires *control*. (*See* Dkt. 35 at 9-10.)

Plaintiff then seeks to satisfy this requirement by contending "Northwestern possessed the SpotMyPhotos software" and argues that Northwestern could have "disabled or elected not to use the SpotMyPhotos software . . . ." (*Id.* at 10.) These contentions come from thin air. Nowhere in the Complaint does Plaintiff allege facts to suggest that Northwestern possessed SpotMyPhotos software; the SpotMyPhotos software is alleged only to have been used by a third-party photographer. (*See* Dkt. 1-1 ¶¶ 5-8, 14, 38.) Nor does Plaintiff allege (much less argue) that mere possession of this software would amount to control over biometric data (*e.g.*, that the data sits locally with the holder of the software). *See Johnson v. NCR Corp.*, No. 22 C 3061, 2023 WL 1779774, at *2 (N.D. Ill. Feb. 6, 2023) ("And the complaint meets Rule 8's pleading requirements, plausibly alleging that NCR exercised control over Plaintiffs' biometric data as it collected that information through the NCR POS system Plaintiffs used."). The closest Plaintiff comes is his unadorned contention that "Northwestern makes its photographers . . . use SpotMyPhotos." (Dkt.

---

[4] Plaintiff tacitly admits that he failed to allege whether Northwestern plausibly had access to the biometric data at issue. (Dkt. 35 at 10 ["While it is unclear at this point whether Northwestern could access the actual biometric data . . . ."]).

1-1 ¶ 13.) There is no factual support whatsoever for this assertion. Regardless, Plaintiff does not allege any facts to support that a photographer's use of third-party software gives Northwestern any control or dominion over biometric data.

*       *       *

Plaintiff's theory of liability as to Northwestern is internally inconsistent and woefully deficient. In his opposition brief and his opposition filed to CloudSpotter's Motion to Dismiss, Plaintiff concedes his theory is that the ***SpotMyPhotos software*** captures and collects biometrics. (Dkt. 35 at 8, emphasis added; *see also* Dkt. 36 at 1-2.) Plaintiff does not provide any factual allegations to plausibly allege that Northwestern captures, collects, or possesses biometric data. The mere fact that the event in question took place at a Northwestern facility does not somehow render Northwestern liable for the software selection of a third-party photographer, much less liable for the data derived by that fourth-party software.

## CONCLUSION

For the foregoing reasons, Northwestern University respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety with prejudice.

14

Dated: November 17, 2025          /s/ Mark S. Eisen

                                  Mark S. Eisen
                                  meisen@beneschlaw.com
                                  Olivia Sullivan
                                  osullivan@beneschlaw.com
                                  **BENESCH, FRIEDLANDER,
                                  COPLAN & ARONOFF LLP**
                                  71 S. Wacker Drive, Suite 1600
                                  Chicago, Illinois 60606
                                  Telephone:  (312) 212-4949
                                  Facsimile:  (312) 767-9192

                                  *Attorneys for Defendant*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

following attorneys of record:

Mark Anthony Bulgarelli
**Progressive Law Group LLC**
1570 Oak Ave. Suite 103
Evanston, IL 60201
markb@progressivelaw.com
Tel: (312) 787-2717

Scott Kane Stukel
**Cameron & Kane LLC**
2864 N Milwaukee Ave
Chicago, IL 60618
scott@cameronandkane.com
Tel: (872) 588-0727

David A. Wheeler
Joshua Alexander Hanson
**Neal Gerber & Eisenberg LLP**
225 W. Randolph St.
Ste. 2800
Chicago, IL 60606
dwheeler@nge.com
jhanson@nge.com
Tel: (312) 269-8000

/s/ Mark S. Eisen

16