UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MATTHEW HOOKS,

      Plaintiff,

      v.

CLOUDSPOTTER TECHNOLOGIES INC.
AND NORTHWESTERN UNIVERSITY,

      Defendants.

No. 25 CV 9754

Judge Georgia N. Alexakis

## MEMORANDUM OPINION AND ORDER

Plaintiff Matthew Hooks brings this putative class action against defendants CloudSpotter Technologies Inc. and Northwestern University under Illinois' Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. Both defendants have moved to dismiss plaintiff's complaint, albeit on different grounds. [20], [30]. For the reasons that follow, the Court grants the motions to dismiss while giving plaintiff leave to amend his complaint.

## I. Legal Standards

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must allege facts sufficient to state a facially plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the complaint's "factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At this stage, the Court assumes that the facts alleged in the complaint are true and draws all reasonable inferences from those facts in the plaintiff's favor. *See Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018). But "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## II. Background

SpotMyPhotos is a photo-sharing platform for special events created by CloudSpotter. [1-1] ¶¶ 2–3. A photographer at a special event using SpotMyPhotos collects contact information from willing individuals whom the photographer has photographed and who wish to have those photographs automatically sent to their phones or digital devices. *Id.* ¶¶ 5–6. SpotMyPhotos scans the initial photo of the willing individual to obtain his or her "facial biometric identifiers or information," sends this initial photo to the individual's phone or digital device, and "then transmits the individual's biometrics and contact information for storage and subsequent use." *Id.* ¶¶ 6–7.

As the event goes on and the photographer takes more photos, "SpotMyPhotos captures and collects biometrics for each person in the [later] photograph[s] and transmits those biometrics to CloudSpotter." *Id.* ¶ 8. Those biometrics "are then compared to the biometrics from the initial photograph of participating individuals at the event that CloudSpotter has saved." *Id.* "If there is a biometric match,"

CloudSpotter then sends the photograph to the matched individual's phone or digital device. *Id.* Because a photograph may contain more than one person, however, plaintiff alleges that "[t]his process results in the capture, collection, and transmission to CloudSpotter of the biometrics" of numerous, non-consenting individuals. *Id.* ¶¶ 9–10.

Northwestern uses SpotMyPhotos at special events occurring at the university and "makes its photographers" do the same. *Id.* ¶¶ 12–13. As a result, plaintiff contends, Northwestern captures and collects biometrics from non-consenting individuals who are photographed by a Northwestern photographer at a Northwestern event, and Northwestern then shares these biometrics with CloudSpotter. *Id.* ¶ 14. Plaintiff contends that he experienced this injury, in violation of Illinois' BIPA statute, when he attended a play on Northwestern's campus in June 2024. *Id.* ¶¶ 15–20, 34–39. According to plaintiff, other individuals who have attended events at Northwestern have experienced the same injury. *Id.* ¶ 40.

### III.  Analysis

#### A. CloudSpotter's Motion To Dismiss

To state a claim under BIPA's Section 15(b), a plaintiff must allege that a private entity "collects," "captures," "or otherwise obtains" a person's "biometric identifier or biometric information" without first satisfying several conditions. 740 ILCS 14/15(b). Plaintiff alleges that CloudSpotter violated Section 15(b) when it "otherwise obtain[ed]" his biometric identifier or biometric information without meeting those conditions. [36] at 8–9. He brings no other claim against CloudSpotter.

*Id.* CloudSpotter, in turn, argues that plaintiff has failed to sufficiently contend that any "biometric identifier" or "biometric information"—within the meaning of BIPA— is being captured, collected, or transmitted by SpotMyPhotos because the complaint is based on allegations that are inaccurate and conclusory. *See generally* [31]. The Court cannot grant CloudSpotter's motion based on purportedly inaccurate information in the complaint; it does, however, grant CloudSpotter's motion based on the conclusory nature of key allegations.

BIPA defines "biometric information" to mean "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *See* 740 ILCS 14/10. "Biometric identifier" is defined to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* "Courts are divided on whether a plaintiff must allege a biometric identifier can identify a particular individual, or if it is sufficient to allege the defendant merely scanned, for example, the plaintiff's face or retina." *See G.T. v. Samsung Elecs. Am. Inc.*, 742 F. Supp. 3d 788, 799 (N.D. Ill. 2024) (collecting cases on both sides of the divide). The Court does not need to stake out a position in this debate to resolve CloudSpotter's motion to dismiss. Plaintiff's position is that he has sufficiently alleged that "SpotMyPhotos can identify an individual, as the system identified Plaintiff's companion and each other individual to whom it shared photos, as it was able to correctly send their photos to their mobile devices." [36] at 4. Plaintiff concedes that SpotMyPhotos did not actually identify him but asserts that the

absence of such an allegation is "irrelevant." *Id.* at 7. All that matters, according to plaintiff, is that SpotMyPhotos "had the technical ability to do so." *Id.*

Setting aside whether plaintiff is correct on that last point, the fact remains that he has skipped over a far more fundamental step in the analysis. When evaluating the sufficiency of a complaint, courts cannot credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). Yet on the question of what SpotMyPhotos collects and captures and, in turn, what CloudSpotter otherwise obtains, the complaint contains only threadbare recitals and conclusory statements.

Plaintiff alleges that SpotMyPhotos "uses biometric facial recognition to function." [1-1] ¶ 4. According to plaintiff, the platform "scans the initial picture of individuals wanting photos sent to them in order to obtain their facial biometric identifiers or information," and then throughout the remainder of the complaint, plaintiff refers to the captured items collectively as "biometrics." *Id.* ¶ 7. Those "biometrics" are then transmitted to CloudSpotter. *Id.* ¶¶ 7–8; *see also id.* ¶¶ 9–10, 14, 16, 19, 39, 40. There is only one paragraph in the complaint where plaintiff attempts to explain in more precise terms what he means by "biometric facial recognition," "facial biometric identifiers or information," and "biometrics." In Paragraph 18, he alleges that "Northwestern *scanned the facial geometry* of Plaintiff and other individuals attending events at Northwestern University." (Emphasis added.)

These allegations simply parrot the pertinent statutory language. *See* 740 ILCS 14/15(b) (prohibiting the collection of a person's "biometric identifier or biometric information"); 740 ILCS 14/10 (defining 'biometric identifier' as including a "scan of … face geometry"). They therefore fail to pass muster under Rule 8. *See Iqbal*, 556 U.S. at 678 (plaintiff must allege sufficient "factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

This deficiency bears directly on the viability of plaintiff's claim. As the district court pointed out in *Martell v. X Corporation*, BIPA defines "biometric identifiers" to exclude photographs and defines "biometric information" as excluding "information derived from items … excluded under the definition of biometric identifiers." No. 23 C 5449, 2024 WL 3011353, at *2 (N.D. Ill. June 13, 2024) (citing 740 ILCS 14/10). But without additional factual content about how SpotMyPhotos actually operates, the Court cannot assess whether plaintiff has successfully navigated around these exclusions to sufficiently allege a BIPA violation.

In *Martell*, the district court concluded that the plaintiff there had not. *Id.* at *2–3. The *Martell* plaintiff pleaded that the pertinent technology "creates a unique digital signature (known as a 'hash') of an image, which is then compared against signatures (hashes) of other photos to find copies of the same image" and that the creation of this "hash" "necessitates creating a scan of that person's facial geometry." *Id.* at *2. *Martell* was not swayed by these allegations. It faulted the plaintiff for not alleging facts "indicating that the hash is a scan of face geometry, as opposed to

6

merely a record of the photo." *Id.* at *3. And it did not—indeed, could not—the conclusory allegation that the creation of "a unique hash for each photo" necessarily implied that the technology "is scanning for an individual's facial geometry when creating the hash." *Id.* at *2.

The complaint here contains even less information about how SpotMyPhotos operates than the information available to the district court in *Martell*. At bottom, plaintiff has alleged only that SpotMyPhotos "scans the initial picture … to obtain facial biometric identifiers or information" and then compares these "biometrics" from that initial photograph to "biometrics" obtained from later photographs. [1-1] ¶¶ 7–8. But what are the "facial biometric identifiers or information" that are obtained through the scan of the initial photo? The Court won't assume that a scan of a photo creates a scan of an individual's face geometry, *see Martell*, 2024 WL 3011353, at *3, and the Court can't credit a conclusory allegation to that effect either, *see* [1-1] ¶ 18. As it stands, the complaint provides no assurance that SpotMyPhotos is capturing or collecting—and that CloudSpotter, in turn, is otherwise obtaining—a "biology-based set of measurements … that can be used to identify a person," *see Martell*, No. 23 C 5449, 2024 WL 3011353, at *4 (citing *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017)), or whether SpotMyPhotos operates in a manner that does not violate BIPA at all.

Moreover, without additional factual content regarding the manner in which SpotMyPhotos operates, the Court cannot reasonably infer that SpotMyPhotos captures and collects, and subsequently transmits, "biometrics"—within the meaning of BIPA—from consenting individuals and non-consenting individuals alike. Plaintiff tries to gloss over this difference, arguing that because SpotMyPhotos can and does identify some individuals, it is necessarily capable of identifying all individuals. *E.g.*, [36] at 4. But without further factual support, that extrapolation does not seem so plain. The nature and amount of information that SpotMyPhotos captures, collects, and transmits for purposes of making a positive identification may very well be different from the nature and amount information it captures, collects, and transmits for purposes of merely determining that one face is not the same as another. Although plaintiff does not need to supply all of SpotMyPhotos' operating specifications to state a claim, he does need to say enough to assure the Court that his claim falls within the purview of Section 15(b). *See G.T.*, 742 F. Supp. 3d at 798 ("Section 15(b) is concerned with private entities collecting, capturing, or obtaining Biometrics, not creating technology.").

By comparison, in *Sosa v. Onfido, Inc.*, the district court concluded that plaintiff had sufficiently alleged that defendant obtained information that plausibly constituted a scan of face geometry, within the meaning of BIPA, when plaintiff alleged that the defendant's software "scans identification cards and photographs to locate facial images and extracts a unique numerical representation of the shape or geometry of each facial image," which the plaintiff referred to as a "faceprint." 600 F.

8

Supp. 3d 859, 871 (N.D. Ill. 2022). In *Rivera*, plaintiff sufficiently alleged that Google violated BIPA when it generated "face templates" by uploading and scanning photographs, locating the plaintiff's face, and "zero[ing] in on its unique contours to create a 'template' that maps and records her distinct facial measurements." 238 F. Supp. 3d at 1091, 1095. And in *Vance v. Microsoft Corporation*, the plaintiff sufficiently alleged a BIPA violation when it contended that the technology at issue "scanned the facial geometry" of images and "created a comprehensive set of annotations of intrinsic facial features, including craniofacial distances, areas and ratios, facial symmetry and contrast, skin color, age and gender predictions, subjective annotations, and pose and resolution." 525 F. Supp. 3d 1287, 1290, 1296 (W.D. Wash. 2021) (internal quotation marks removed).

In noting the deficiencies in plaintiff's complaint, the Court stresses that it has set aside CloudSpotter's assertions about how SpotMyPhotos, in its view, operates. *E.g.*, [31] at 1–2, 5–6, 12–13. A district court cannot consider evidence outside the pleadings to decide a motion to dismiss without converting it into a motion for summary judgment, *see Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), and even then, the parties are to be given a reasonable opportunity to present all pertinent material, including by undertaking discovery, *see* Fed. R. Civ. P. 12(d). None of the exceptions to this general rule apply here. The information that CloudSpotter puts forth in its briefs is not attached to the complaint or central to it, and it is not properly

9

subject to judicial notice. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *see* Fed. R. Evid. 201.[1]

At bottom, the Court has resolved CloudSpotter's motion to dismiss based on flaws in the complaint apparent on its face. Owing to those flaws, the Court grants CloudSpotter's motion.

### B. Northwestern's Motion To Dismiss

Northwestern has advanced different grounds than CloudSpotter for dismissing the complaint. It argues that it is exempt from liability under BIPA's Section 25(c) and, in any event, that plaintiff has failed to plausibly allege that— within the meaning of BIPA—Northwestern "captures" or "collects" or is "in possession of" biometric identifiers or biometric information. Arguably, the Court does not need to address Northwestern's challenges because CloudSpotter's prevailing argument is already fatal to the complaint. The Court nonetheless addresses both of Northwestern's arguments to inform the parties' next steps.

### 1. Whether the Court Can Conclude That Northwestern Is a BIPA-Exempt Financial Institution

Section 25(c) of BIPA exempts from coverage "a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 [("GLBA")] and the rules promulgated thereunder." 740 ILCS 14/25(c). Although BIPA does not expressly define the term "financial

---

[1] The Court does not credit CloudSpotter's argument that plaintiff has waived any challenge to the request that the Court take judicial notice of facts on how SpotMyPhotos operates. [38] at 3–4. Plaintiff clearly staked out that position. [36] at 3. Although CloudSpotter faults this argument as "incomplete and undeveloped," [38] at 3, nothing elaborate was needed to advance an argument so basic to the process by which motions to dismiss are decided.

institution," several district courts—using slightly varying interpretative approaches—have reached the same fundamental conclusion: To be a BIPA-exempt "financial institution," the institution must be "significantly engaged in financial activities," *see Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1171 (C.D. Ill. 2022), and that this requirement is satisfied when a university has demonstrated "its significant engagement lending funds to consumers." *See id.*; *see also Powell v. DePaul Univ.*, No. 21 C 3001, 2022 WL 16715887, at *3 (N.D. Ill. Nov. 4, 2022) ("[T]he exemption in BIPA section 25(c) applies to institutions of higher education that are significantly engaged in financial activities such as making or administering student loans."); *Fee v. Illinois Inst. of Tech.*, 21-CV-02512, 2022 WL 2791818, at *5 (N.D. Ill. July 15, 2022) (for the plaintiff university to qualify for Section 25(c)'s exemption, it must "regularly extend[] and administer[] student loans").

Plaintiff does not dispute that these earlier district-court decisions correctly defined the term "financial institution" for purposes of BIPA's Section 25(c). [35] at 3–6. Nor does plaintiff dispute that a university *can be* a "financial institution" for those purposes. Instead, plaintiff argues that on the current record, the Court cannot conclude that Northwestern is significantly engaged in financial activities, such as by "lending funds to consumers," *Duerr*, 590 F. Supp. 3d at 1171; or "making or administering students loans," *Powell*, 2022 WL 16715887, at *3; or "regularly extend[ing] and administer[ing] student loans," *Fee*, 2022 WL 2791818, at *5.

Northwestern points to the following publicly available information to support

11

its position that it is "significantly engaged" in pertinent financial activities:[2] (1) Northwestern's name appears on a list of educational institutions that participate in Title IV federal student aid programs published on the website for the Department of Education ("DOE"); (2) Northwestern has executed a Program Participation Agreement with the DOE in which Northwestern has agreed to comply with the GLBA and Federal Trade Commission rules in order to receive access to federal financial aid funding; and (3) statements from DOE's Federal Student Aid Office asserting that institutions of higher education are financial institutions subject to Title V of the GLBA. *See* [21] at 9–10; [21-1], [21-2], [21-3], [21-4]. According to Northwestern, these facts leave "little doubt" that it "significantly engages in lending funds and is thus a 'financial institution' under Title V of the GLBA." [21] at 10–11.[3] The Court disagrees.

---

[2] Plaintiff does not oppose Northwestern's request that the Court take judicial notice of these facts. And because these facts are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," the Court does so without converting the instant motion into a motion for summary judgment. *See* Fed. R. Evid. 201(b)(2); *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

[3] Northwestern also points to public comments from the Federal Trade Commission ("FTC") when implementing Title V of the GLBA. [21] at 8–9. These comments support the proposition that a university can be a financial institution subject to Title V of the GLBA, not that all universities automatically qualify as such financial institutions. *See* Fed. Trade Comm'n, Privacy of Consumer Financial Information, Final Rule, 65 Fed. Reg. 33,646, 33,648 (May 24, 2000) (disagreeing "with those commenters who suggested that colleges and universities are not financial institutions" because "[m]any, if not all, such institutions appear to be significantly engaged in lending funds to consumers"). In a similar vein, Northwestern points to agency regulations from the FTC and the Consumer Financial Protection Bureau stating that universities that comply with the Federal Educational Rights and Privacy Act ("FERPA") are deemed in compliance with the GLBA. [21] at 9, n.3. This point does not move the needle. There is no record establishing that Northwestern is in compliance with FERPA, and the agencies' regulations reflect that Northwestern still would need to show that it is a financial institution. *See Fee*, 2022 WL 2791818, at *3 (discussing relevant regulations from both agencies).

For the same reasons as the district court in *Fee*, the Court sets aside the statements from the DOE; they are not entitled to deference where the DOE has not been given rulemaking or enforcement authority with respect to the GLBA. 2022 WL 2791818, at *5. On this point, Northwestern appears to agree. It writes that the DOE documents are not "de facto regulations or binding guidance." [37] at 4, n.2. Instead, Northwestern maintains that the utility of these documents is "simply to indicate that Northwestern is significantly engaged in financial activities (and what those activities are)." *Id.*

Northwestern, however, does not sufficiently grapple with the meaning of "significantly." The Court agrees with Northwestern that, to determine whether a university is a "financial institution" under BIPA's Section 25(c), it "is not relevant that a university's primary purpose is not financial." [37] at 6 (citing *Powell*, 2022 WL 16715887, at *3); *see also Patterson v. Respondus, Inc.*, No. 20 C 7692, 2022 WL 7100547, at *8 (N.D. Ill. Oct. 11, 2022). Still, the adverb must modify the phrase "engaged in financial activities" in some meaningful fashion. Otherwise, federal agencies would not have injected "significantly" into the pertinent regulations. *See, e.g., Patterson*, 2022 WL 7100547, at *8 (discussing 12 C.F.R. § 1016.3(l)(3)(i)); *Duerr*, 590 F. Supp. 3d at 1171 (discussing 16 C.F.R. § 313.3(k)(1)); *cf. Loughrin v. United States*, 573 U.S. 351, 358 (2014) (noting the "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute").

Based on its plain and ordinary meaning—and in the absence of an argument from Northwestern that the word "significantly" should be defined any differently—

the Court understands the word "significantly" to mean "noticeable," "substantial," "considerable," and "large," which is how the online edition of the Oxford English Dictionary defines the word.[4] Applying this meaning to the documents before it, the Court does not see facts supporting a conclusion that Northwestern's participation in federal student aid programs is "noticeable," "substantial," "considerable," or "large." The current record permits the Court to find only that Northwestern is engaged in financial activities to some unknown degree.

The Court is not alone in declining to read any more into the record before it. Presented with records very similar to the record here, three other district courts have been unwilling to conclude—without a more robust set of facts—that a university was exempt from liability under BIPA's Section 25(c). In *Fee*, the district court examined documents provided by the Illinois Institute of Technology ("IIT"), the defendant educational institution, and concluded:

> [T]he fact that IIT is a participant in federal student aid programs does not, by itself, establish that IIT is *regularly* extending or administering student loans. To reach that conclusion, the Court requires further factfinding concerning IIT's lending activities. For example, the Court does not yet know how many IIT students receive federal student aid, whether IIT itself makes loans to its students, or the nature and extent of IIT's involvement with respect to its students' loans (federal or otherwise).

2022 WL 2791818, at *5.

---

[4] *See Significant*, Oxford English Dictionary Online, https://www.oed.com/dictionary/significant_adj?tl=true&tab=meaning_and_use#234731323 (last visited April 17, 2026). Merriam-Webster defines "significant" similarly: "having or likely to have influence or effect: important" and "large enough to be noticed or to have an effect." Significant, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/significant (last visited April 17, 2026).

In *Harvey v. Resurrection University*, the defendant educational institution (Resurrection University) supplied the district court with a record much like the one here: "publicly available information from the FTC and the U.S. Department of Education (DOE) about its status as a financial institution and compliance with the GLBA"; evidence that the university participated in the DOE's federal student aid program and was required to comply with the GLBA and its implementing rules; statements from the DOE and FTC "showing that they consider higher education institutions to be financial institutions under the GLBA, and due to the 'significant role colleges and universities play with respect to student financial aid'"; and publicly available materials describing the university's "significant financial aid program." No. 21-CV-3203, 2022 WL 3716213, at *4 (N.D. Ill. Aug. 29, 2022). Still, *Harvey* concluded that "whether Resurrection actually qualifies for the exemption is a factual question best left for a later stage in the case." *Id.*

*Patterson* reached the same conclusion—and on a more comprehensive record than the one here. For example, in *Patterson*, the defendant university (Lewis) relied on judicially noticeable facts that it participated in federal financial aid programs, that "98% of the university's students receive financial aid," and that "[f]irst-year students at Lewis receive an average of $18,000 per year in grants and scholarships." 2022 WL 7100547, at *8. Nonetheless, *Patterson* was "unwilling to conclude on this sparse record" that Lewis itself was significantly engaged in financial activities within the meaning of the GLBA. *Id.* at *9. It explained: "At most, these facts seem to demonstrate that Lewis participates in programs through which its students

15

obtain loans from *third-party* lenders" and "do not establish that Lewis itself is 'significantly engaged in lending funds to consumers.'" *Id.* (emphasis added).

Northwestern asks the Court to follow the lead of the district court in *Doe v. Northwestern University*, 586 F. Supp. 3d 841, 843 (N.D. Ill. 2022), which found that Northwestern was exempt from BIPA liability based on publicly available DOE documents "confirm[ing]" the university to be significantly engaged in lending funds. Aside from the fact that *Doe* is not binding authority, nothing in the DOE documents in the instant record bears on the magnitude of Northwestern's lending activities. Again, they demonstrate only that Northwestern participates, to an unknown degree and capacity, in federal student aid programs. And nothing in *Doe's* analysis reflects that the court there had to contend with the meaning of the word "significantly." The Court is similarly unpersuaded by Northwestern's argument that, by declining to follow *Doe*, the Court is placing Northwestern in an "untenable position." [37] at 8. The Court is not concluding that Northwestern is *not* a BIPA-exempt financial institution. It simply needs more facts to make that determination.[5]

*Powell* also was willing to conclude, based on the facts before it, that DePaul University was a BIPA-exempt financial institution. 2022 WL 16715887, at *3. But *Powell's* analysis suggests that the plaintiff's challenge to the university's position was trained on the fact that DePaul was in the business of higher education, not the business of engaging in financial activities. *Id.* The Court already has dispensed with

---

[5] Because this question is a mixed question of law and fact, the Court earlier directed the parties—at Northwestern's own suggestion–to begin engaging in discovery on whether Northwestern qualifies as a financial institution for purposes of BIPA's Section 25(c). [33].

that particular objection. *See supra* at 13. Moreover, the decision in *Powell* does not indicate that the plaintiff there raised the argument that plaintiff raises here. [35] at 5. Similarly, nothing on the face of *Duerr* suggests that district court had to grapple with a comparable challenge to the educational institution's position. *See* 590 F. Supp. 3d at 1171.

For these reasons, the Court declines, at this stage of the proceedings, to dismiss plaintiff's claims against Northwestern under BIPA's Section 25(c). In any later briefing on this issue, the Court expects the parties to more expansively address the questions—both factual and legal—it has raised in the preceding analysis.

### 2. Whether Plaintiff Has Sufficiently Alleged That Northwestern Captures, Collects, and Possesses Biometric Information.

As explained earlier, to state a claim under BIPA's Section 15(b), a plaintiff must allege the defendant private entity "collects," "captures," "or otherwise obtains" a person's "biometric identifier or biometric information" unless it first satisfies several conditions. 740 ILCS 14/15(b). BIPA does not provide definitions for these terms, so after supplying their "popularly understood meaning," courts have concluded that liability under Section 15(b) "requires an active step in obtaining biometrics." *Clark v. Microsoft Corp.*, 688 F. Supp. 3d 743, 746–47 (N.D. Ill. 2023) (collecting cases); *see also G.T.*, 742 F. Supp. 3d at 797–98 (explaining that "[c]ollectively, all these verbs 'mean to gain control' of Biometrics" and that "[t]his requires the defendant to make an affirmative effort—to take an 'active step'— towards receiving the Biometrics").

17

Here, plaintiff alleges that "SpotMyPhotos captures and collects biometrics for each person in the photograph, and transmits those biometrics to CloudSpotter." [1-1] ¶ 8. Plaintiff further alleges that Northwestern acts in the same way. *See, e.g., id.* ¶ 14 ("When individuals attend an event where photographers are using SpotMyPhotos, … their biometrics are captured and collected by the party taking the photographs, such as Northwestern… and their biometrics are shared with CloudSpotter…."); *id.* ¶ 15 (alleging that plaintiff's biometrics "were captured and collected by Northwestern"); *id.* ¶ 39 ("Each time a photograph was taken that included Plaintiff, Northwestern captured and collected his biometrics, and transmitted them to CloudSpotter….").

Northwestern maintains that these allegations are "internally inconsistent" and "contradictory" and therefore that the Court need not accept the one implicating Northwestern as true. [21] at 13–14. According to Northwestern, where plaintiff has alleged that the "biometric extraction takes place within SpotMyPhotos," plaintiff cannot "simultaneously allege" that Northwestern is the entity that captures and collects the biometrics. *Id.* at 14.

The Court is not persuaded by this particular challenge. It is reasonable to infer that some individual or entity actually operates SpotMyPhotos, and it is not apparent to the Court that this entity could not be Northwestern alone (for example, via a technology licensing agreement with CloudSpotter) or why Northwestern and CloudSpotter could not both be liable for how the platform functions. In *Heard v. Becton, Dickinson & Co.*, at the motion-to-dismiss stage, the district court rejected an

18

argument that a medical-technology manufacturer was not liable under Section 15(b), where the manufacturer argued, in part, "that Plaintiff's own allegations suggest that it is the hospitals, not [the manufacturer], that stores users' biometric information on their own systems and servers." 524 F. Supp. 3d 831, 841 (N.D. Ill. 2021). *Heard* continued: "It is entirely plausible that users' biometric information is stored on *both* the hospitals' servers and BD's servers." *Id.; see also Johnson v. NCR Corp.*, No. 22 CV 3061, 2023 WL 1779774, at *4 (N.D. Ill. Feb. 6, 2023) (contemplating scenario in which both the provider and the user of the technology could be liable under Section 15(b)).[6]

Of course, the Court is not making any finding now as to which entity or individual—Northwestern, CloudSpotter, and/or an event photographer—captured and collected the biometric information at issue. It is merely pointing out that plaintiff's complaint is not "internally inconsistent," [21] at 13, and, on that basis, the Court cannot discredit allegations that Northwestern captures, collects, or otherwise obtains biometric identifiers or biometric information.

Northwestern next argues that plaintiff's allegations are too conclusory to be credited, and on this point, the Court agrees. Plaintiff attempts to connect the dots

---

[6] The Court reaches this conclusion without considering plaintiff's proffer that "Northwestern is listed as a partner of CloudSpotter on CloudSpotter's website" and that "Northwestern had to license the use of SpotMyPhotos from CloudSpotter." [35] at 7, n.4; [35-1]. Plaintiff tries to support the first fact with a screenshot from a no-longer-available version of CloudSpotter's website and the second fact with a link to an undated webpage which lists "plans and pricing" for SpotMyPhoto's use. Neither proffered fact can "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Chavez-Deremer v. Miller*, 154 F.4th 516, 522 n.5 (7th Cir. 2025) (where defendant "could argue about the veracity or reliability of the information from … commercial websites," the appeals court did not take judicial notice of the information from those websites).

between CloudSpotter, "the creator and provider" of SpotMyPhotos, and Northwestern by alleging that Northwestern "uses SpotMyPhotos" and "makes its photographers, who are either employees of the University or agents of the University, use SpotMyPhotos." [1-1] ¶¶ 2, 12–13. In essence, plaintiff alleges that owing to its software-use requirement and relationship with event photographers, Northwestern is liable for any capturing, collecting, or otherwise obtaining of biometric identifiers or information that SpotMyPhotos enables. [35] at 7.

This is too conclusory of a jump. In particular, the Court cannot credit the allegation that Northwestern's photographers are agents of the university, capable of binding it through their actions. To impute liability to Northwestern for the actions of another, "[i]t is insufficient to merely plead the legal conclusion of agency." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 498 (1996); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Here, the only allegation that arguably bears on a principal-agent relationship is the allegation that Northwestern "makes its photographers … use SpotMyPhotos." [1-1] ¶ 13. That is insufficient to satisfy the test for agency in Illinois: "[W]hether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 640 (7th Cir. 2021). As *Sosa* further explained: "an agency relationship can be created by contract or conduct," but "not all contracts create agency relationships and not all conduct creates agency relationships." *Id.*

20

Here, even if the Court takes as true that Northwestern required photographers at its events to use SpotMyPhotos as a precondition of their work for the university, without additional, supporting facts, the Court cannot reasonably infer that a contract or course of conduct existed between Northwestern and its photographers sufficient to create an agency relationship. As a result, the Court cannot credit plaintiff's conclusory allegation that by operating through its photographers, Northwestern captured, collected, and otherwise obtained biometrics. Nor can the Court reasonably infer from plaintiff's allegations that the photographers at the campus event plaintiff attended are employed by Northwestern. He has not pleaded sufficient factual content to allow the Court to draw that reasonable inference. *See Iqbal*, 556 U.S. 662, 678; [1-1] ¶¶ 13, 15, 38.

Plaintiff also alleges that Northwestern unlawfully "shared" or "transmitted" biometric information. *Id.* ¶¶ 14, 16, 39, 46. Through these allegations, the Court understands plaintiff to be claiming that Northwestern violated BIPA's Section 15(d). Under that provision, "[n]o private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless" certain conditions are met. 740 ILCS 14/15(d). Like the terms "capture," "collect," and "otherwise obtain," BIPA does not define "possession." In this District, courts have coalesced around the term's popularly understood meaning and defined possession as occurring "when a person has or takes control of the subject property or holds the property at his or her disposal." *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp.

21

3d 960, 968 (N.D. Ill. 2020); *see also G.T.,* 742 F. Supp. 3d at 795; *Clark,* 688 F. Supp. 3d at 749.

For the same reasons plaintiff has not sufficiently alleged that Northwestern captured, collected, or otherwise obtained biometrics, plaintiff also has failed to sufficiently allege that Northwestern was "in possession of"—i.e., took control of—biometric identifiers or information. Plaintiff asks this Court to draw that inference based on thin allegations purporting to link the use of SpotMyPhotos to Northwestern solely via photographers whose precise relationship to the university is insufficiently alleged. From this contention, the Court cannot reasonably infer that Northwestern was in possession of biometrics, even after accepting as true plaintiff's allegation that photographers at Northwestern's events used SpotMyPhotos.

For these reasons, the Court grants Northwestern's motion to dismiss.

## IV. Conclusion

The Court therefore grants CloudSpotter's and Northwestern's motions to dismiss. [20], [30].

Plaintiff may file an amended complaint if he can cure the deficiencies identified above while still complying with his obligations under Federal Rule of Civil Procedure 11. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana,* 786 F.3d 510, 519–20 (7th Cir. 2015) Any amended complaint is due on or before 5/1/26. If plaintiff does not submit an amended complaint by 5/1/26 the dismissal will automatically convert to a dismissal with prejudice, and the case will be terminated.

22

The Court sets a status hearing for 5/7/26 at 9:30 a.m. to discuss next steps in this matter.

ENTER: 4/17/26

_____
Georgia N. Alexakis
United States District Judge

Date: 4/17/26